IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| **DARRYL WILLIAMS** | ) | |
| | ) | |
|     **8816 Ditzler Ave.** | ) | |
|     **Kansas City, Missouri 64138** | ) | |
| | ) | |
|     **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Case No. _____ |
| | ) | |
| **SAFE FLEET ACQUISITION CORP.** | ) | |
| | ) | |
|     **Registered Agent:** | ) | |
|     **COGENCY GLOBAL, INC.** | ) | |
|     **850 New Burton Road, Suite 201** | ) | |
|     **Dover, DE 19904** | ) | |
| | ) | |
|     **Defendant.** | ) | |

## PLAINTIFF'S COMPLAINT

Plaintiff Darryl Williams ("plaintiff"), by and through his undersigned attorneys and for his Complaint against defendant Safe Fleet Acquisition Corp. ("defendant"), hereby alleges and states as follows:

## PARTIES

1. Plaintiff is an individual and a citizen and a resident of the State of Missouri.

2. Plaintiff is African American.

3. Defendant is a corporation organized under the laws of the State of Delaware and doing business in Missouri. At all relevant times, defendant was authorized to conduct business in the State of Missouri and was doing business in the State of Missouri.

1

4. Defendant is a nationwide company with over 500 employees and it has its principal place of business located at 6800 East 163rd Street, Belton, Missouri 64012. As part of its business, defendant manufactures components for emergency response vehicles.

5. Defendant is an "employer" within the meaning of Section 701(b) of Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. § 2000e et seq. ("Title VII").

## JURISDICTION AND VENUE

6. Jurisdiction is proper in this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as well as 42 U.S.C. § 2000e-5(f)(3).

7. Venue in this District is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to plaintiff's claims occurred in this District.

## ADMINISTRATIVE PROCEDURES

8. On or about April 7, 2022, plaintiff timely filed with the Equal Employment Opportunity Commission ("EEOC") a charge of discrimination against defendant on the basis of race (attached as **Exhibit A** and incorporated herein by reference).

9. On or about July 29, 2022, the EEOC issued to plaintiff his Notice of Right to Sue for his claims against defendant (attached as **Exhibit B** and incorporated herein by reference), and this lawsuit was filed within 90 days of EEOC's issuance of the Notice of Right to Sue.

10. The aforesaid charge of discrimination provided the EEOC sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of this judicial complaint may be and is as broad as the scope of the EEOC investigation, which could reasonably be expected to have grown out of the Charge of Discrimination.

11. Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this action.

## FACTS COMMON TO ALL COUNTS

12. Plaintiff Darryl Williams has spent most of his adult life working in the automobile/vehicle manufacturing industry. Prior to working for defendant, plaintiff worked as a supervisor and production lead for 11 years for Harley Davidson manufacturing motorcycles.

13. After 11 years at Harley Davidson, plaintiff applied for a position at Defendant Safe Fleet Acquisition Corp.

14. Defendant hired plaintiff at its facility in Belton, Missouri in December 2016 as a production lead.

15. As a production lead at defendant's facility, plaintiff reported to the production supervisor position.

16. During plaintiff's employment with defendant, plaintiff performed all his duties satisfactorily, received excellent reviews, and exceeded the expectations for his position.

17. During plaintiff's employment, plaintiff was passed over for promotion on two separate occasions by less qualified white employees.

18. On both occasions, plaintiff was eligible for promotion and was by far the more qualified employee.

19. On the first occasion in late 2019, plaintiff applied for the position of production supervisor and interviewed with human resources supervisor Candice Mangum and plaintiff's direct supervisor Eric Rahe – both white.

20. Despite being qualified with almost fifteen years of experience in the vehicle manufacturing industry, defendant promoted a white employee named Kyle Lange with very little experience in manufacturing. This decision was made by Candice Mangum and Eric Rahe despite plaintiff's excellent resume.

21. Given his experience in manufacturing, plaintiff was asked by management to help train Kyle Lange on how to supervise production at the facility.

22. Kyle Lange quit his position with defendant later because of his inability to complete basic job requirements.

23. In 2021, human resources manager Candice Mangum asked plaintiff if he preferred to be called "black or colored" in front of several other employees.

24. During this same time period, plaintiff witnessed a white employee wearing a rebel flag necklace. Plaintiff complained to human resources about the employee, but nothing was done in response. In contrast, an African American employee who wore a "Black Lives Matter" t-shirt to work was told by management to turn his shirt inside out before returning to work.

25. Similarly, African American employees were reprimanded for not wearing masks during the COVID pandemic, and white employees were not.

26. In addition, white temporary employees were immediately hired as permanent employees by defendant, and African American employees were not.

27. In April of 2021, the position of production supervisor was once again posted by defendant. By this time, plaintiff had worked for defendant for more than five years and had excellent reviews in his position.

28. Plaintiff again interviewed with Candice Mangum and Eric Rahe for the production supervisor position.

29. On June 8, 2021, defendant announced via an internal memorandum that a white employee named Tracy Albarran had been given the position of production supervisor.

30. Prior to her promotion, Ms. Albarran had never worked in production and had no experience supervising employees in manufacturing for defendant.

4

31. Following the decision to not promote plaintiff, the plant manager explained to plaintiff that he lacked enough experience for the position. This was absolutely false.

32. Plaintiff worked in multiple departments for over five years for defendant, worked at Harley Davidson for more than eleven years and was knowledgeable and well-trained in the manufacturing process for defendant.

33. Plaintiff worked for the previous two production supervisors, and he gained valuable experience along the way.

34. Throughout the course of his employment for defendant, plaintiff took on several tasks that were the responsibility of the production supervisor, and plaintiff had great familiarity with the production supervisor position.

35. Ms. Albarran had no experience with defendant to be a supervisor in manufacturing and was still chosen over plaintiff for promotion.

36. Frustrated by defendant's continued racial discrimination against African Americans, particularly as it related to his repeated requests for promotion, plaintiff had no choice but to resign from defendant in August 2021.

**COUNT I**
**(Violation under Title VII – Failure to Promote)**

37. Paragraphs 1 through 36 are incorporated herein by reference.

38. Plaintiff is an African American male and is a member of a class of persons protected by Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., by virtue of his race.

39. As set forth above, plaintiff began his employment with defendant in approximately July 2016.

40. Plaintiff performed his job duties for defendant above and beyond what was required during his employment.

41. In late 2019, plaintiff applied for promotion to production supervisor, which was an available position.

42. Plaintiff was highly qualified for this position.

43. Instead, defendant gave this position to a less qualified white employee named Kyle Lange.

44. Plaintiff did not receive this promotion due to his race, in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a)

45. In April 2021, plaintiff again applied for promotion to production supervisor, which was again an available position.

46. Again, plaintiff was highly qualified for this position.

47. Instead, defendant again gave this promotion to a less qualified white employee named Tracy Albarran.

48. Again, plaintiff did not receive this promotion due to his race, in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a).

49. During plaintiff's employment for defendant, no minority candidate was promoted to a supervisory role.

50. During plaintiff's employment, all production supervisors hired or promoted by defendant were white, and plaintiff trained several of the white supervisors promoted ahead of him.

51. Both Mr. Lange and Ms. Albarran were less experienced than plaintiff, and both were promoted anyway.

52. When defendant made its decisions to promote white employees over plaintiff on two separate occasions, defendant possessed a clear discriminatory motive in making its decisions.

53. As a direct and proximate result of defendant's actions and/or inactions, plaintiff has been deprived of income (as a result of not being promoted), as well as other monetary and non-monetary benefits.

54. As a further direct and proximate result of defendant's actions and/or inactions, plaintiff has suffered a loss of self-esteem, humiliation, emotional distress and mental anguish, and related compensatory damages.

55. Defendant failed to properly train and/or otherwise inform their supervisors and employees concerning their promotion process under the civil rights laws, including Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq.

56. Defendant engaged in these discriminatory practices with malice or with reckless indifference to the federally protected rights of plaintiff. Plaintiff is therefore entitled to an award of punitive damages in an amount sufficient to punish defendant or to deter them and other companies from like conduct in the future.

57. Due to the discriminatory conduct of defendant as set forth above, plaintiff had no choice but to quit his job working for defendant and suffered pecuniary loss as a result.

58. Plaintiff is entitled to recover from defendant reasonable attorneys' fees, as provided in Section 706(k) of Title VII, 42 U.S.C. § 2000e-5(k).

WHEREFORE, plaintiff requests that the Court enter judgment in his favor and against defendant for such damages, actual, nominal and punitive, as are fair and reasonable, for his reasonable attorneys' fees and costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems proper.

# COUNT II

## (Violation under 42 U.S.C. § 1981)

59. Paragraphs 1 through 58 above are incorporated herein by reference.

60. Plaintiff is a member of a class of persons protected by 42 U.S.C. § 1981, by virtue of his race – African American.

61. At all relevant times, plaintiff performed work for defendant in consideration of hourly payment and benefits thereby creating a contractual relationship with defendant.

62. During his employment with defendant, plaintiff was subjected to adverse employment actions as follows:

   a. Plaintiff was passed over for promotion by defendant and the promotions were given to less qualified white employees;

   b. Plaintiff was asked if he preferred to be called "black or colored" by a superior white employee;

   c. Employees of defendant were permitted to wear Confederate Flag shirts and jewelry without discipline or repercussion while African American employees were not permitted to wear "Black Lives Matter" t-shirts. Plaintiff's complaints about these issues were ignored by defendant.

   d. African American employees were routinely disciplined for non-compliance with COVID policies and white employees were not.

   e. Temporary African American employees were not hired to be permanent employees and less qualified white employees were.

63. In all of the above instances, similarly situated individuals who were white were treated differently than plaintiff.

64. In all of the above instances, defendant's actions unlawfully interfered with plaintiff's right to equally benefit from his employment with defendant.

65. All of the aforementioned acts and/or omissions were intentional discriminatory actions by defendant.

66. Defendant subjected plaintiff to disparate treatment in the terms, conditions, and/or privileges of his employment because of plaintiff's race. Plaintiff's race was the "but for" reason for defendant's discriminatory treatment of plaintiff.

67. During plaintiff's employment with defendant, plaintiff was adversely subjected to different terms, conditions, and/or privileges of employment than were similarly situated non-African American employees.

68. The circumstances surrounding defendant's decision not to promote plaintiff on two separate occasions, and to instead promote white employees, created an inference of unlawful discrimination.

69. The discriminatory conduct was sufficiently severe or pervasive that a reasonable person in plaintiff's position would find plaintiff's work environment to be hostile or abusive.

70. The discriminatory conduct adversely affected the terms, conditions, and/or privileges of plaintiff's employment and unreasonably interfered with his ability to perform his job duties, and defendant allowed its workplace to become permeated with discriminatory intimidation, insult, and/or ridicule.

71. Plaintiff complained to defendant about the discriminatory and harassing conduct, but defendant failed to take prompt and effective action to remedy the conduct.

72. Defendant knew or should have known of the discriminatory conduct but failed to take prompt and appropriate corrective action to end the discriminatory conduct.

73. Defendant failed to exercise reasonable care to prevent and correct promptly the discriminatory conduct to which plaintiff was subjected.

74. Due to the discriminatory conduct of defendant as set forth above, plaintiff had no choice but to quit his job working for defendant and suffered pecuniary loss as a result.

75. As a direct and proximate result of defendant's actions and/or inactions, plaintiff has been deprived of income because of not being promoted, as well as other monetary and non-monetary benefits.

76. As a further direct and proximate result of defendant's actions and/or inactions, plaintiff has suffered a loss of self-esteem, humiliation, emotional distress and mental anguish, and related compensatory damages.

77. Defendant failed to properly train and/or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including 42 U.S.C. § 1981.

78. Defendant's supervisors and/or managers responsible for setting or enforcing policy in the area of discrimination were aware of the discriminatory conduct to which plaintiff was subjected but failed to respond to properly rectify such conduct.

79. Plaintiff is entitled to recover from defendant reasonable attorneys' fees, as provided in 42 U.S.C. § 1988(b).

WHEREFORE, plaintiff requests that the Court enter judgment in his favor and against defendant for such damages, actual, nominal and punitive, as are fair and reasonable, for his reasonable attorneys' fees and costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all counts and allegations of wrongful conduct alleged in this Complaint in the Western District Court of Missouri at Kansas City.

Respectfully submitted,

**KETCHMARK & McCREIGHT, P.C.**

By: */s/ Ben H. Fadler*
    Michael S. Ketchmark – MO #41018
    Scott A. McCreight – MO #44002
    Ben H. Fadler – MO #56588

11161 Overbrook Road, Suite 210
Leawood, KS 66211
Telephone:   913/266-4500
Facsimile:    913/317-5030
Email:        mike@ketchmclaw.com
Email:        smccreight@ketchmclaw.com
Email:        bfadler@ketchmclaw.com

**Attorneys for Plaintiff**